IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01360-RPM-CBS

KARL EVANS,

    Plaintiff,

v.

SONIC-DENVER T, INC.,
d/b/a Mountain States Toyota and Scion, and
CORNERSTONE ACCEPTANCE CORPORATION,
d/b/a Sonic Automotive, Inc.,

Defendants.

---

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

The matter before the court is Defendants' "Motion to Dismiss, or, in the alternative, Motion to Stay Proceedings and Compel Arbitration" [#4], filed July 26, 2005. Plaintiff filed his Response [#13] on August 24, 2005. Defendants filed their Reply [#21] on September 19, 2005. An Order [#27], filed October 11, 2005, refers Defendants' "Motion to Dismiss, or, in the alternative, Motion to Stay Proceedings and Compel Arbitration" to the Magistrate Judge.

This court has reviewed Defendants' "Motion to Dismiss, or, in the alternative, Motion to Stay Proceedings and Compel Arbitration," the Response and Reply to that Motion, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons discussed below, it is recommended that the Motion to Dismiss be denied and that the Motion to Compel Arbitration be granted. It is

ordered that the Motion to Stay is granted.

**I.      Background.**

Mountain States Toyota and Scion ("MSTS") is a d/b/a of Sonic-Denver T, Inc. (cumulatively "Mountain States").  Located in Denver, Colorado, Mountain States sells new and used automobiles that are or have been transported through interstate commerce.  Mountain States employed Plaintiff as a salesperson from December 20, 2003 through March 20, 2004, when Defendants terminated him.

Sonic Automotive, Inc. ("Sonic") is not a d/b/a/ of Cornerstone Acceptance Corporation ("Cornerstone").  Sonic is a Delaware corporation with its principal place of business in Charlotte, North Carolina, that is engaged in interstate commerce through its interactions with local automobile dealership subsidiaries it owns throughout the country, including Mountain States.  Sonic provides certain dealership policies and procedures, including human resources policies and procedures, to its local dealership affiliates, such as Mountain States.

According to Defendants, Plaintiff signed  "valid and enforceable" arbitration agreements, as a condition of his employment at Mountain States.  Specifically, Plaintiff signed an arbitration agreement on December 27, 2003 ("Agreement #1"), which was part of an "Acknowledgment of Receipt and Understanding" in connection with Plaintiff's receipt of an employee handbook.  On December 27, 2003, Plaintiff also signed a separate "Binding Arbitration Agreement" ("Agreement #2) and a "Compensation Plan" ("Agreement #3") that included arbitration provisions.  Finally, on February 11, 2004, Plaintiff signed a "Sales Consultation Compensation Plan" that contained an arbitration provision ("Agreement # 4").  Defendants claim that

Agreements #1 and 2 were a condition of his employment with Mountain States.

Agreements #3 and 4 contain identical arbitration provisions that require binding arbitration under the FAA for "any disputes regarding the terms of this pay plan or [Plaintiff's] employment or termination from employment (including claims of discrimination and/or harassment)." Plaintiff acknowledged that although he was not required to sign Agreements #3 and 4 as a condition of his employment, he desired "to take advantage of the benefits of arbitration." Plaintiff also acknowledged that he understood that he was surrendering his right to a jury trial. However, at no time prior to filing this lawsuit did Plaintiff submit the claims asserted herein for resolution by arbitration.

Defendants argue that Plaintiff, in contravention of the arbitration agreements, filed this lawsuit demanding a jury trial– which he chose to waive. Accordingly, Defendants seek to dismiss Plaintiff's Complaint as a matter of law pursuant to the Federal Arbitration Act (FAA). Alternatively, Defendants ask this court to stay this case and compel Plaintiff to submit his claims to arbitration.

Plaintiff responds that the arbitration agreements are unilateral, illusory, and conflicting. Hence, they are unenforceable. Further, Plaintiff argues that Defendants have waived their rights to compel arbitration by removing this action from state court.

**II.     Analysis.**

    **A.     Motion to Dismiss.**

Defendants argue that because the Arbitration Agreements contemplate Plaintiff's claims, this court should dismiss Plaintiff's Complaint as a matter of law for

lack of subject matter jurisdiction. Plaintiff disputes the existence of a valid, controlling arbitration agreement, and insists this court has jurisdiction over his claims.

While § 3 of the FAA requires the court to stay litigation when claims are properly referable to arbitration, it does not provide for dismissal of the case under **FED. R. CIV. P. 12(b)(1)**. *9 U.S.C. § 3. See also Lazenby v. Balls Food Stores, Inc.,* 2005 WL 1521971, *2 (D. Kan. 2005). Indeed, the Supreme Court has held that the FAA does not oust the district court's jurisdiction over claims subject to arbitration. *Anaconda v. Am. Sugar Refining Co.,* 322 U.S. 42, 44 (1944). The Tenth Circuit has concluded that § 3 of the FAA contemplates continuing supervision by the district court. *Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 538-39 (10th Cir.1987). Accordingly, Defendants' Motions to Dismiss should be denied.

    **B.**    **Motion to Compel.**

Alternatively, Defendants seek to compel Plaintiff to submit his claims to arbitration pursuant to the FAA. Section 4 of the FAA requires that the court compel arbitration for resolution of the issues between parties bound by an arbitration agreement. *9 U.S.C. § 4.* Pursuant to § 4, a court shall issue an order compelling arbitration when (1) a written agreement to arbitrate exists between two parties; (2) one of the parties is aggrieved by the alleged refusal of another to arbitrate; and (3) the party aggrieved petitions the court to direct that such arbitration proceed in the manner provided in the written arbitration agreement. The presumption in favor of arbitration that generally exists, disappears when a party– here the Plaintiff– disputes the existence of a valid arbitration agreement. *Dumais v. American Golf, Corp.,* 299 F.3d

1216, 1220 (10th Cir. 2002). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." ***Avedon Eng'g, Inc. v. Seatex,*** 126 F.3d 1279, 1287 (10th Cir. 1997).

Plaintiff challenges the first statutory requirement: the existence of a valid, written agreement between the parties. Specifically, Plaintiff points to several inconsistencies and ambiguities between the four Arbitration Agreements and claims that they are illusory and unenforceable.

### *I.    Unilaterality, Illusoriness, and Enforceability.*

First, Plaintiff claims the Arbitration Agreements are illusory and unenforceable. Plaintiff relies on three cases in which an arbitration agreement was contained within an employee handbook. ***See Diaz v. Arapahoe (Burt) Ford, Inc.,*** 68 F. Supp. 2d 1193 (D. Colo. 1999) (holding that employee's "acknowledgment and receipt" of employee handbook did not create a legally binding arbitration provision); ***Gourley v. Yellow Transp. LLC.,*** 178 F. Supp. 2d 1196, 1200-01 (D. Colo. 2001) (finding arbitration agreement illusory and unenforceable because the handbook allowed unilateral revision, recision, and modification of any portion thereof); ***Stein v. Burt-Kuni Once, LLC,*** — F. Supp. 2d —, 2005 WL 2406110 (D. Colo. 2005). (rendering illusory an arbitration agreement that allowed employer to unilaterally modify arbitration provision). The Tenth Circuit held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." **See *Dumais,*** 299 F.3d at 1219.

Agreement #1 is entitled "Acknowledgment of Receipt and Understanding" of an

employee handbook. Apparently, Defendants tried to avoid having the employee handbook serve as a binding employment contract. Yet, simultaneously, Defendants tried to bind Plaintiff to an agreement to arbitrate through the "Acknowledgment of Receipt and Understanding." However, as Judge Kane cautions in **Diaz:** an employer may not select which representations in its employee manual an employee's 'acknowledgment and receipt' will make binding." **Diaz,** 68 F. Supp. 2d at 1194. Pursuant to **Diaz**, Defendants' attempt to make some, but not all, of the provisions of its employee handbook binding should be rejected. Therefore, Agreement #1 should be rejected as a binding arbitration provision between the parties.

However, Arbitration Agreements #2-4 in this case are not within employee handbooks, but are contained in separate agreements. Arbitration Agreements #2-4 are not subject to any overriding employee handbook disclaimers and do not permit the employer to make unilateral changes. Therefore, Plaintiff's reliance on **Gourley**, **Diaz**, and **Stein** is misplaced as to those agreements.

Next, Plaintiff argues that Agreements #3 and 4 are unilateral and do not contain mutual arbitration provisions. Under Agreements #3 and 4, Plaintiff claims that only he, not the Defendants, agree to arbitrate claims.[1] Yet, Plaintiff has not provided any case law which suggests that unilateral, binding arbitration provisions are unenforceable. Instead, Plaintiff provides inapposite cases, standing for the proposition that unilateral modification or recision of an arbitration provision is unenforceable.

---

[1] Yet, he concedes that in Agreements #1 and 2, both parties purportedly agree to arbitrate claims.

To resolve this issue, the court turns to state law. ***First Options of Chicago, Inc. v. Kaplan,*** 514 U.S. 938, 944 (1995) (When an employee disputes the enforceability of an arbitration agreement, the FAA requires a court to turn to the contract law of the forum state to determine the outcome). Colorado applies principles governing contract formation to determine whether parties have agreed to submit a claim to arbitration. ***Allen v. Pacheco,*** 71 P.3d 375, 378 (Colo. 2003). Under Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract. ***McCoy v. Pastorius,*** 125 Colo. 574, 246 P.2d 611 (1952); ***Sedalia Land Co. v. Robinson Brick & Tile Co.,*** 28 Colo.App. 550, 475 P.2d 351 (1970); ***see also, Harris v. Green Tree Financial Corp.,*** 183 F.3d 173 (3d Cir.1999) (noting that most federal and state courts have held that mutuality is not a requirement of a valid arbitration clause, and summarizing state and federal cases so holding); ***see also Adamovic v. Metme Corp.,*** 1993 WL 177063, at *3 (N.D. Ill.,1993) (upholding a unilateral, binding arbitration provision).

Here, each party to the contract has provided consideration--defendant, by agreeing to compensate Plaintiff in exchange for his sale of vehicles. In these circumstances, the arbitration provision is not unenforceable simply because it may not require Defendant to arbitrate. ***See Rains v. Foundation Health Systems Life & Health,*** 23 P.3d 1249, 1255 (Colo. App., 2001).

Finally, Plaintiff claims Agreements #2 is invalid and unenforceable because they are not signed by an agent of either of the Defendants. The FAA clearly states that a valid, enforceable arbitration provision need not contain the signatures of the

parties. Rather, the necessary contract elements include:

1. a written (though not necessarily signed) contractual provision, *See* **1 Commercial Arbitration §§ 11:1 to 11:7**,

2. in any maritime transaction or a contract evidencing a transaction involving commerce,

3. to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or

4. an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal. **83 AMJUR POF 3d 1.**

Each of the four Agreements submit to the court comply with these four requirements. Therefore, Plaintiff's attempt to invalidate Agreements #2 for a missing signature should be rejected.

### *ii.   Ambiguity.*

Next, Plaintiff claims that, taken together, the Arbitration Agreements are too ambiguous to be enforceable. Plaintiff relies on ***Dumais v. American Golf Corp.,*** 299 F.3d 1216, 1217 (10th Cir. 2001), in which an arbitration agreement contained two conflicting provisions about the circumstances under which it could be modified. The court concluded that the ambiguity at issue directly related to the very existence of an agreement to arbitrate. Therefore, the court construed the ambiguity against the employer and refused to enforce the arbitration agreement. The court relied, in part, on the fact that the provision was contained within an employee handbook and allowed

unilateral modification of the arbitration agreement. *Id.,* at 1219.

Again, the Arbitration Agreements #2-4 in this case are not within employee handbooks, but are contained in separate agreements. Further, the Arbitration Agreements are not subject to any overriding employee handbook disclaimers, and do not permit the employer to make unilateral changes.

Further, although there is some ambiguity as to how Plaintiff's claims should be arbitrated, one thing is clear: in each and every Agreement, the Plaintiff agreed to submit claims to arbitration. **See Berke v. Tri Realtors**, 208 Cal. App. 3d 463, 257 Cal. Rptr. 738 (1st Dist. 1989) (In construing arbitration clauses, all documents incorporated by reference, or which impose an obligation to arbitrate, must be construed). Despite Plaintiff's many assertions of inconsistencies, Plaintiff clearly agreed to submit his claims to arbitration.[2]   There is not a shred of language in any of the four Agreements that suggests the Plaintiff ever intended to litigate his claims.

### iii. Incomplete/Conflicting Agreements.

Having said that, it *is* unclear to whom the parties agreed to submit their claims of arbitration. Agreement #1 states that claims in arbitration shall be submitted to "retired trial court judge of unlimited jurisdiction" **Mtn. to Dismiss, Exh. A-2.**

---

[2] Agreement #1 and #2 read: "I understand by agreeing to this binding arbitration provision, both I and the company give up our rights to a trial by jury."
Agreement #3 and #4 read: "I understand and voluntarily agree that any disputes regarding the terms of this pay plan or my employment or termination from employment (including claims of discrimination and/or harassment) will be resolved exclusively in accordance with binding arbitration governed by the Federal Arbitration Act, and carried out in conformity with the procedures of the Arbitration Act."

Agreement #2 states: "Any arbitrator herein shall be approved and listed by AAA, and shall be selected according to AAA procedures." **Mtn. to Dismiss, Exh. A-3**.  And, finally, Agreements #3 and #4 state all claims shall be resolved by a "retired Superior Court Judge." **Mtn. to Dismiss, Exh. A-4/5.**   Applying basic contract principles, it appears that Defendant Mountain States and Plaintiff agreed to modify prior agreements to arbitrate by signing Agreement #4, in which they agreed to resolve any claims between them before a "retired Superior Court Judge," who, confusingly, does not exist in Colorado state or federal courts.  *See* **83 AMJUR POF 3d 1** (In modifying an arbitration scheme, parties may eliminate a previously agreed to contract to arbitrate where all parties concur).

Despite this, the court concludes that this "incompleteness" does not invalidate the arbitration clause contained in Agreement #4.  An arbitration agreement is enforceable as long as it  (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.  ***Cole v. Burns Intern. Sec. Services,*** 105 F.3d 1465, 1482 (D.C. Cir.1997); ***Shankle v. B-G Maint. Mgmt. of Colo., Inc.,*** 163 F.3d 1230, 1234 (10th Cir.1999) (citing ***Cole'***s discussion of these factors with approval and citing ***Graham Oil Co. v. ARCO Prod. Co.,*** 43 F.3d 1244, 1247-48 (9th Cir.1994), which found arbitration clauses may be rendered unenforceable if they do not provide for all the remedies available under a statute).

10

Here, Arbitration Agreement #4 provides:

" . . .I understand and voluntarily agree that any disputes regarding the terms of this pay plan or my employment or termination from employment (including claims of discrimination and/or harassment) will be resolved exclusively in accordance with binding arbitration governed by the Federal Arbitration Act, and carried out in conformity with the procedures of the Arbitration Act."

Although somewhat vague, this provision does specify the types of claims to be submitted to arbitration and attempts to have claims submitted to a neutral arbitrator– a retired judge. **But cf. Stein,** 2005 WL 2406110, at *3 (finding that no binding arbitration provision existed because provision was silent as to types of claims subject to arbitration). Further, any remaining vagueness does not alone render an arbitration provision unenforceable. In **Green Tree Financial Corp. v. Randolph,** 531 U.S. 79, 90-91, 121 S. Ct. 513, 522, 148 L.Ed.2d 373, 383-84 (2000), the Supreme Court noted that failure of an arbitration agreement to address fees and costs alone does not invalidate the provision, suggesting that incompleteness alone does not invalidate and otherwise enforceable provision. Additionally, Section 5 of the FAA provides courts with the authority to identify an arbitrator for parties who cannot agree upon one. **9 U.S.C. § 5**; *see also Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 449 (2003) (approving arbitration clause with similar provision for the selection of an arbitrator after motion to compel arbitration). Section 5 provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; **but if no method be provided therein**, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, **then upon the application of either party to the controversy the**

11

**court shall designate and appoint an arbitrator or arbitrators or umpire**, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator. **9 U.S.C.A. § 5**.

Therefore, assuming that Agreement # 4 controls this dispute, if the parties are unable to name an arbitrator, either party may upon application to this court request that the court designate an arbitrator. Accordingly, the arbitration clause contained therein, which specifies the types of claims to be submitted to arbitration, is sufficiently complete to be enforceable by Defendants.

Finally, the parties to the Agreement never specifically agreed to arbitration location. Again, this incompleteness does not invalidate the Arbitration Agreement. **See Blinco v. Green Tree Serv'g LLC,** 400 F.3d 1308, (11th Cir. 2005) (finding that arbitration clause in promissory note was not rendered unenforceable by its failure to specify identity of arbitrator, forum, or location). Colorado courts have applied the Restatement (Second) of Contracts § 204 to supply an omitted contract term when the parties have not agreed about a term "which is essential to a determination of their rights and duties." **See, e.g., Costello v. Cook,** 852 P.2d 1330, 1332-33 (Colo. App. 1993). Under Colorado law, courts are authorized to supplement a contract whenever parties have not agreed to an essential term. **Id.**

Because no site is named for arbitration, the parties here may be faced with a proverbial "race to the arbitral hearing room." **83 AMJUR POF 3d 1.** Where arbitration may be conducted in one of two locales, then the rule *first in time, first in right* usually applies. **North German Lloyd v. Guaranty Trust Co. of New York**, 244 U.S. 12

(1917). However, this court finds and concludes that it has authority to compel arbitration in any neutral arbitration forum. ***Cf., Ansari v. QWEST Comm. Co.,*** No. 04-1262, 2005 WL 1625225, (10th Cir. July 12, 2005) (holding that court lacked jurisdiction to compel arbitration in its own or another district because arbitration clause at issue specifically provided for Washington, D.C., as the venue for arbitration).

Despite the several inconsistencies and ambiguities of the various Agreements, construing Arbitration Agreement #4 as the final, modified agreement to arbitrate, the court concludes that Plaintiff's claims should be submitted to arbitration. Therefore, the Motion to Compel Arbitration should be granted. Any incomplete or missing terms within that Agreement should be resolved according to the FAA and Colorado law.

### *iv.  Waiver.*

Finally, Plaintiff argues that Defendants have waived their rights to compel arbitration by removing this action from state court to this court. Plaintiff relies on ***Lapides v. Board of Regents of Univ. Sys. Of Georgia,*** 535 U.S. 613 (2002), in which the court found that the defendant waived Eleventh Amendment immunity by removing the action from state to federal court. Plaintiff argues that the reasoning of ***Lapides*** is applicable to arbitration provisions.

In ***Lapides,*** Georgia attempted to remove a case from state court, where its sovereign immunity had been waived by state statute, to federal court, where Georgia claimed sovereign immunity still existed. The court, worried about "unfair tactical advantages," unanimously held that Georgia had waived its federal sovereign immunity. ***Id.*** at 621. The holding was limited "to the context of state-law claims, in

13

respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617.  Further, *Lapides* "has been primarily applied to cases involving the Eleventh Amendment," and Plaintiff provides no support for his claim that *Lapides* should extend beyond the realm of sovereign immunity.  *See Dantz,* 123 Fed. Appx. at 706-07.

Therefore, this court refuses to extend *Lapides* beyond the sovereign immunity context.  Even if *Lapides* did apply, the potentially unfair litigation tactics the *Lapides* court was concerned with are not present in this case.  *See id.*   Therefore, Plaintiff's reliance of Eleventh Amendment immunity cases to support his waiver argument is misplaced.

Under the FAA, a party can waive a right to arbitrate. ***American Locomotive Co. v. Gyro Process Co.,*** 185 F.2d 316, 318 (6th Cir.1950).  Moreover, waiver can be implied by a defendant's actions in pursuing litigation. *Id.* at 317, 320 (holding that a party waived its arbitration right when it requested arbitration after it litigated "numerous motions and proceedings" and engaged in extensive discovery over a period of seven years).  However, mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitration. ***See Williams v. Cigna Fin. Advisors, 56 F.3d 656*** (5th Cir.1995) (holding that a defendant did not waive its arbitration right when it removed an action to federal court, filed a compulsory counterclaim, and engaged in discovery after a motion to stay discovery was denied).

Indeed, the FAA specifically addresses the issue of removal, without suggesting that

14

removal is tantamount to waiver:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. **9 U.S.C.A. § 205**.

The Tenth Circuit in ***Metz v. Merrill Lunch, Pierce, Fenner & Smith, Inc.,*** 39 F.3d 1482, 1488-89 (10th Cir. 1994), delineated the six factors for determining whether a party has waived its right to arbitrate: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of the lawsuit" before the party notified the opposing party of intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration' had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. None of the aforementioned factors apply here.  In this case, Defendants promptly demanded arbitration after receiving service of Plaintiff's Amended Complaint and requested that Plaintiff submit his claims to arbitration.  Therefore, Plaintiff's waiver argument should be rejected.

    **C.**    **Motion to Stay Proceedings.**

Because Arbitration Agreement #4 concerns interstate commerce and contains

an arbitration provision applicable to any claim or controversy arising out of or relating to that Agreement, the Federal Arbitration Act controls this matter.  *See* **9 U.S.C. § 2.** Section 3 of the Federal Arbitration Act requires the court to stay proceedings when (1) a party files suit; (2) that suit involves issues that are subject to a written agreement to arbitrate; and (3) the opposing party makes an application to the court to stay the proceedings until an arbitration is held pursuant to an agreement between the parties. *See* **9 U.S.C. § 3.**  Here, all of the aforementioned statutory requirements are met. Therefore, a stay of this proceeding is required by the language of the FAA.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Stay Proceedings [#4], filed July 26, 2005, **IS GRANTED**.

**IT IS RECOMMENDED as follows:**

1. That Defendants' Motion to Dismiss [#4], July 26, 2005, **BE DENIED;**

2. That Defendants' Motion to Compel Arbitration **BE GRANTED;**

3. That Plaintiff **BE ORDERED** to submit his claims to arbitration;

4. That this case **BE ADMINISTRATIVELY CLOSED** subject to reopening for good cause pursuant to **D.C.COLO.LCivR. 41.2**.  "Good cause" shall include a request by either party for assistance in selecting a neutral place and/or arbitrator to resolve this dispute.

**III.   Advisement to the Parties.**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)**; *In re Griego*, 64 F.3d 580, 583 (10th Cir.1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1).** A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. ***See In re Griego***, 64 F.3d at 583; ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1).**

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." ***One Parcel of Real Property***, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. ***See Vega v. Suthers***, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); ***International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.,*** 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  ***Ayala v. United States***, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

DATED at Denver, Colorado, this 7th day of December, 2005.

                                        BY THE COURT:

                                        s/Craig B. Shaffer
                                        Craig B. Shaffer
                                        United States Magistrate Judge